QUINTANO v. IBOS

(May 5, 1930. Opinion and Decree.)
(June 2, 1930. Rehearing Refused.)
(July 19, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

John D. Miller, of New Orleans, attorney for plaintiff, appellant.

Cobb & Jones, Herman M. Baginsky, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. This suit results from a collision between an automobile and a pedestrian, which occurred August 15, 1928, about 6:00 p. m., at the intersection of Esplanade avenue and Royal street in the city of New Orleans. Esplanade avenue is a wide street with two roadways separated by a neutral ground. At the time of the accident Jos. M. Quintano, now deceased, the husband of the plaintiff in this case, was crossing from the neutral ground to the lower lake side of Esplanade avenue and Royal street. As he walked across the roadway a large street car was going up Royal street and crossing the same intersection in an opposite direction, and in a manner to obscure Quintano's view of traffic on the other or river side of the street car. When Quintano reached a point about the center of the roadway the street car had passed him on its way uptown, and then, for the first time, he had a clear view of the vehicular traffic which had been halted to permit of the passing of the street car. The automobile, driven by Frederick Glaeser, which had been stopped with other vehicles, immediately started behind the passing street car and suddenly confronted Quintano. In an effort to avoid collision with this automobile, and with some uncertainty of movement and inde-

cision, it appears that Quintano started backward, and that the driver of the automobile, relying upon the assumption that Quintano would continue forward, turned his car toward the neutral ground and ran into Quintano who, in an unsuccessful effort to save himself, grasped the radiator. His hold was insecure, he was knocked down and rolled over, and seriously injured. He died the next day. His widow brings this suit for damages.

There was judgment in favor of defendants dismissing plaintiff's suit, and she has appealed.

The driver of the automobile, Frederick Glaeser, was a minor under the tutelage of his mother, Mrs. Dorothy Wagner Ibos, whose first husband, Glaeser, had died, and who had thereafter married Jos. B. Ibos, who had been appointed co-tutor. Both Joseph B. Ibos and his wife are sought to be held in solido for damages caused by the minor, Frederick Glaeser, under the authority of C. C. art. 2318, which provides that:

"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.

"The same responsibility attaches to the tutors of minors."

It is objected on behalf of Jos. B. Ibos that this provision of the Code does not apply to a stepfather who had been confirmed as co-tutor in a case like the present one, where the mother of the minor is living and has qualified as his tutor. It will be observed that the codal article makes no exception in favor of co-tutors, and its language is broad enough to in-

clude them. We are pointed to no authority which has construed this article in the manner contended for by defendant, and our own impression is that it should not be so construed.

On the merits, the position of defendant's counsel is that the unfortunate accident which caused Quintano's death was due entirely to his own fault, in that he attempted to cross the roadway at a time when his vision of the traffic, which he should have known was waiting to cross in his direction, was obstructed, and that after the obstruction was removed by the passing of the street car his "unusual conduct in stepping, turning towards the advancing automobile, stepping backward towards the neutral ground of the street and then facing completely the advancing automobile" was the immediate cause of the collision.

Glaeser, the driver of the automobile, it is said, could not be expected to foresee such extraordinary conduct on Quintano's part and he, therefore, cannot be charged with responsibility for the accident.

We first observe that there is no plea of contributory negligence in the record. Whether Quintano should have waited until the traffic behind the street car had cleared the intersection, before committing himself to the roadway is, from our point of view, unnecessary to consider in view of the absence of any plea of contributory negligence. On the other hand, Glaeser, with reckless haste, darted from behind the rear of the passing street car and in front of another automobile which was following the street car intending to cross Esplanade avenue in the direction in which the street car was going. It is said that Glaeser must have been going very slowly because he had been stopped to permit of the passing of the street car but, without discussing or attempting to determine from the record his exact speed, we find it excessive, because when confronted with the emergency, which the presence of Quintano immediately in his path presented, he does not appear to have had the automobile under control, otherwise he would have been able to stop, as it was his duty to do when the confusion of Quintano was apparent by the uncertainty of his backward and forward movements. Blashfield Ency. of Automobiles, vol. 1, p. 601; Berry on Automobiles (6th Ed.) vol. 1, p. 334; Johnson vs. Bisso Ferry Co. et al., 13 La. App. 159, 127 So. 661, decided April 7, 1930.

A case rather closely in point was considered in Carroll vs. New Orleans Ry. & Light Co., 125 La. 898, 51 So. 1029, where the court held that a motorman had reason to believe that persons might be attempting to cross a street directly behind a wagon which had just passed by, and that he was negligent in driving his street car across before making certain that the roadway was clear.

In Stone vs. Baton Rouge Yellow Cab Co., 124 So. 778, a case decided by the Court of Appeal for the First Circuit, it was held that the driver of a taxicab who ran into a pedestrian at a street crossing was negligent because he failed to exercise ordinary care in keeping a lookout for pedestrians, where he had every reason to expect them to be.

In Griffith vs. Slaybaugh, 58 App. D. C. 237, 29 F. (2d) 437, it was held that a chauffeur was negligent in driving his automobile without proper regard of the rights of pedestrians at intersections. The court saying that the "duty and responsibility imposed on drivers of automobiles is measured by the possibilities of dangers attending their use on public highways; automobile being a vehicle of great weight,

speed, and power, in contact with which the pedestrian is helpless."

See, also, American Dye Works vs. Baker, 210 Ky. 508, 276 S. W. 133; Parznik vs. Central Abattoir, 284 Pa. 393, 131 A. 372; Bellinger vs. Hughes, 31 Cal. App. 464, 160 P. 838.

Our conclusion is that the driver of the automobile was negligent in emerging from behind the passing street car without any assurance that the intersection was clear of pedestrian traffic, and in the further respect that his speed was excessive under the circumstances, and finally, if we are mistaken as to his speed, and his car was under control, when he observed the presence of Quintano, he failed to take advantage of the last clear chance of avoiding the accident by bringing his car to a stop, instead of attempting to anticipate the movements of Quintano, who was confused, perplexed, and frightened by the sudden and menacing appearance of the automobile immediately before him. Navailles vs. Diehlmann, 124 La. 421, 50 So. 449, 134 Am. St. Rep. 508.

As to the quantum, the deceased, at the time of his death, was 67 years of age and earning $100 per month as a shoe clerk. We believe an allowance of $4,000 to be proper under the circumstances.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of Mrs. Joseph M. Quintano, plaintiff herein, and against Mr. and Mrs. Joseph B. Ibos, defendants, in the sum of $4,000, with legal interest thereon from judicial demand until paid.